CAIRBRE *v.* McQUILLAN.

MONEY LENT—EVIDENCE—LETTERS—ADMISSIBILITY.

> In an action for money advanced by plaintiff to his stepson while the latter was attending school, letters written by defendant at the time, addressed jointly to plaintiff and defendant's mother, wherein he expressed gratitude for money loaned him by plaintiff and promised to return it, were admissible as admissions of the receipt of the money, and that it was not a gift, even though it was necessary to construe them as admissions of a joint liability, since plaintiff was not bound by the letters, his cause of action was not being based thereon, but being for money advanced, of which the letters were merely evidence.

Error to Marquette; Stone, J. Submitted February 17, 1908. (Docket No. 170.) Decided March 17, 1908.

Assumpsit by Bernard Cairbre against James McQuillan for money had and received. There was judgment for defendant, and plaintiff brings error. Reversed.

*J. L. Heffernan (Thomas, Cummins & Nichols,* of counsel), for appellant.

*T. J. Dundon,* for appellee.

BLAIR, J. Plaintiff instituted this suit to recover for moneys advanced to defendant, his stepson, to enable him to pay for his education as a physician and surgeon at McGill College, Montreal, Canada, from 1870 to 1874, and for other items afterwards advanced. The defendant pleaded the general issue with notice of set-off, payment, and the statute of limitations. Defendant admitted receiving various sums of money from home, but claimed that it was sent by his mother and not by his stepfather, and that he had paid it back.

"*Q.* Did you pay back the money you received from home while in college?

"*A.* Several times over I gave it back.

"*Q.* Who received it?

"*A.* My mother."

Defendant left the State in 1890 and has not resided here since. Plaintiff testified to certain payments by defendant, which, if believed by the jury to have been made, would prevent the barring of the claim by the statute of limitations. These payments were denied by the defendant. Mr. F. B. Spear, a witness for plaintiff, testified:

"Mr. Cairbre, the plaintiff, worked for me from fifteen to twenty years; I did business for him in the way of remitting money by his orders to the defendant here; I sent drafts, or money, or express orders; something of that kind, under the instruction of Mr. Cairbre, on a great many occasions, my bookkeeper and I, sometimes one and sometimes the other; I knew of it; the money was money due him for work; different sums; I could not mention any sums."

Counsel for plaintiff, in the course of his examination, offered certain letters signed by defendant in evidence, whereupon the following occurred:

"*Mr. Dundon:* I object to it.

"*The Court:* It is not proper testimony. You offer a letter. Let me see the letter.

"*Mr. Dundon:* I object to the introduction of the letters. If there is anything in them in the form of a promise to pay money, it is made to the father and mother jointly.

"*The Court:* That seems to be so. It reads, 'My dear mother and father.' No promise to them could be sued upon by this husband. The only thing that would make it material would be the promise to pay. This letter being addressed to the father and mother does not strengthen your case. He cannot sue upon a promise made to the father and mother; it is a joint promise. I admitted these letters before, but my attention was not called to that fact.

"*Mr. Heffernan:* We go on the ground that it is an acknowledgment of the debt; if he includes somebody else—

"*The Court:* It is an acknowledgment of a debt to two persons.

"*Mr. Heffernan:* We have authorities to show that it wouldn't make any difference as long as it included his debt.

"*The Court:* I will sustain the objections to the letters unless you have some letters addressed to him, some letter containing this promise to him.

"*Mr. Heffernan:* I suppose I may take an exception.

"*The Court:* Oh, certainly, certainly.

"*Mr. Heffernan:* They were all addressed the same way.

"*The Court:* They will all have to be excluded then— the same ruling."

In his charge to the jury, the court said:

"And he claims that these moneys sent to him from time to time were sent by his mother. That it was her money, which she had accumulated in the ways in which he says a woman who is somewhat thrifty, would accumulate money. If this money was the money sent him by the plaintiff and his wife so that the wife had an interest in this money, this plaintiff cannot recover in this suit; there is no evidence that he represents his wife, or has any right to sue for her."

The letters in question were addressed either "My Dear Mother and Father," or "My Dear Father and Mother." Three of the letters as printed in the record read as follows:

"MONTREAL, McGILL COLLEGE, July 15, '73.

"My Dear Father and Mother: With much pleasure I hasten to answer your kind and affectionate note. Am so glad when I read your letter to ascertain that dear mother's health and spirits are so good. She may well anticipate her future destiny for she has duly earned it. And you, dear father, you have done a work and is still doing, which I never expected, neither did I deserve. But, please God, it's only lent, to be paid with good interest. * * * Hoping this will find you all well as I am at present.

"Your loving son,

"JAS. McQUILLAN, to dear father and mother."

"MONTREAL, June 16th, '73.

"My Dear Father and Mother: Your favor duly came to hand yesterday bearing an order of $50 which I am forever obliged to you and I hope next summer things will take a different turn. Am glad to hear you are all well, especially mother; I hope her health will improve and I am sure it will if she strictly follow out my advice. Am sure if I was once graduated and had her with me she will never feel sick any more. * * *

"Dear father, I am glad you got your old job and an increase in salary; you are one of the noblest men that ever lived; things in every case seems to thrive with you. I hope God and I shall repay you for all those days of sweat and toil. I'll stop, hoping God will spare your health and me for some time and we will astonish the natives.

"JAS. McQUILLAN.

"Dear father and mother."

"MONTREAL, Feb. 2d, '75.

"My Dear Mother and Father: It's with pleasure I answer your most loving letter of the 21st Jan. inst. I am well, thanks be to God.

"Thinking dear mother's health is improving, well dear mother may say that she will have some person to back her in a short time, * * * and well she deserves it; she is fighting the great fight and hope God will keep misfortunes away and we will conquer. I am glad to hear that you are working this winter, of course, there is a great deal of self attached to this expression, but one thing sure, it won't be many winters till you will not need work of Spear, or any person, but in the meantime, it's very necessary. * * * Dear father, again I will have to call on your benevolence again for a little money again. All my tickets are bought and everything is paid up till Feb. 2d, so you will see how much I will want. * * *

"Your son,

"JAS. McQUILLAN.

"To dear father and mother. Goodby, except a kiss."

The jury brought in a verdict of no cause of action, and plaintiff brings the record to this court for review, assigning as error, among other assignments, that the court erred in ruling against the admission of the letters above referred to.

We are of the opinion that this assignment is well founded. The letters quoted tended to support the plaintiff's contention that he himself sent money to the defendant from his earnings, which belonged exclusively to himself, and that defendant so understood. The letters of July 15, 1873, and February 2, 1875, are recognitions of liability to plaintiff individually, and are inconsistent with defendant's claim that his mother sent him the money. Even if it were necessary to construe the letters as admissions of a joint liability, we are of the opinion that they would still be competent evidence of the fact of receipt of the money and of the fact that it was a loan and not a gift. The plaintiff would not be bound by the letters so that he would not be permitted to prove the fact of liability to be several instead of joint. Plaintiff's cause of action was not based upon the letters, but upon the furnishing of the money; the letters were merely evidence, by way of admissions, in support of his cause of action and in contravention of defendant's claim, subject to explanation like any oral evidence, and to be weighed by the jury and used for what they considered them worth in view of all the testimony in the case.

In view of a new trial, we do not consider it necessary to discuss the other assignments of error.

The judgment is reversed, and a new trial granted.

GRANT, C. J., and MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.